Filed 11/10/15  P. v. Segundo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LORENZO RANGEL SEGUNDO,<br><br>    Defendant and Appellant. | F068672<br><br>(Super. Ct. No. CRM028873)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.

Gabriel Bassan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Lorenzo Rangel Segundo guilty of one count of felony animal cruelty after a dog was beaten to death. The trial court sentenced defendant to three years' probation, which included six months in jail. On appeal he asserts the trial court erroneously excluded character evidence he wished to introduce to establish he would not harm a dog, and the prosecutor committed misconduct. We conclude there was no reversible error and affirm the conviction. However, as the People concede, some of the conditions of probation were improperly imposed. Therefore, we will order those conditions vacated.

## FACTUAL AND PROCEDURAL SUMMARY

The complaint, which was deemed the information after the preliminary hearing, charged defendant with one count of animal cruelty in violation of Penal Code section 597, subdivision (a).

Liliana Reyes testified that on the day of the incident, she was in her apartment when her son asked her to look out of the window. Reyes observed defendant, whom she recognized from the neighborhood, beating a small dog to death with a piece of wood. Reyes only knew defendant by his nickname, Pimpo. Reyes was looking through a window, and defendant was six to seven feet away. When defendant stopped hitting the obviously deceased canine, he rinsed his head off with water from a hose (apparently from his brother's apartment). Reyes went outside and asked defendant why he killed the dog, and what was he going to do with the animal. Defendant said he would pick up the dog. He then retrieved a bucket from his brother's apartment and removed the dog. Children from the neighborhood later found the dog in a trash dumpster.

A neighbor, Yolanda Valdez, reported the crime to the police. Atwater Police Officer Scott Duncan responded to the scene and obtained a statement from Reyes. He asked some children in the area if they knew where Pimpo lived. The children pointed

2.

him to an apartment. An occupant in the apartment identified Pimpo as defendant, and directed Duncan to the address at which defendant lived. While Duncan was investigating the scene, defendant arrived and introduced himself. When Duncan asked defendant about the incident, defendant denied he beat the dog.

An autopsy of the dog established the cause of death as blunt force trauma. The dog's injuries were consistent with being struck by a piece of wood, or being hit by a vehicle.

Defendant testified in his defense, denying he killed the dog, or had any involvement with the dog. He claimed that while he was familiar with Reyes, she must have confused him with another person, perhaps his brother.

The jury found defendant guilty. The trial court imposed a sentence of three years' probation which included six months in local custody, as well as other terms and conditions.

## DISCUSSION

### I. Opinion Evidence.

Defendant attempted to introduce evidence of his good character pursuant to Evidence Code section 1102. The general rule is that evidence of a person's character, including evidence in the form of an opinion, evidence of a person's reputation, and evidence of specific incidents of conduct, is admissible unless otherwise prohibited by statute. (Evid. Code, § 1100.) Evidence Code section 1101 is the primary limitation imposed on character evidence. This section prohibits the introduction of evidence of a person's character to prove his conduct on a specific occasion, with an exception not relevant here. Defendant relied on Evidence Code section 1102, which specifically makes admissible evidence of a defendant's character, in the form of opinion or reputation evidence, when offered by a defendant in a criminal action to prove his or her

conduct on a specific occasion was in conformity with his or her character. Defendant attempted to illicit evidence of his character to prove he would not mistreat an animal.

After the prosecution objected to the proposed testimony, the trial court held a hearing pursuant to Evidence Code section 402 to determine if the witness would be allowed to testify. The witness proffered by defendant was his sister-in-law, Adilene Martinez. Martinez testified she had known defendant for three years, and he had lived with Martinez and her husband, defendant's brother, for three months. She also interacted with defendant at family events. While she had contact with defendant's family, friends and neighbors, she never discussed defendant with any of them. However, she did not hear anyone suggest defendant was ever cruel to animals. On cross-examination Martinez stated she had never spoken to anyone about how defendant treated animals.

The trial court noted Martinez did not testify about her opinion of whether Martinez would harm an animal. Nor had Martinez discussed defendant's reputation regarding animals with anyone. The only reputation type evidence Martinez could provide was that she had not heard anyone state that defendant treated animals poorly. It then concluded that Martinez had insufficient foundation to testify about defendant's reputation for the treatment of animals. When defense counsel stated that, if asked, Martinez would opine that defendant treated animals fairly, the trial court observed that such an opinion would be based on her observations of defendant interacting with a dog he shared with his brother, so it would not be admissible. Defendant asserts the trial court erred in prohibiting evidence of his character either in the form of reputation or opinion evidence.

Evidence Code section 1102 "allows a criminal defendant to introduce evidence, either by opinion or reputation, of his character or a trait of his character that is 'relevant to the charge made against him.' [Citation.] Such evidence is relevant if it is inconsistent

4.

with the offense charged—e.g., honesty, when the charge is theft—and hence may support an inference that the defendant is unlikely to have committed the offense. In appropriate cases, such circumstantial evidence 'may be enough to raise a reasonable doubt in the mind of the trier of fact concerning the defendant's guilt.' [Citations.]" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1305 (*McAlpin*).) As explained in *McAlpin*, we are required to read into Evidence Code section 1102 the requirements of Evidence Code section 800 which addresses lay opinion testimony. Section 800 limits lay opinion testimony to an opinion that is rationally based on the perceptions of the witness, and which is helpful to a clear understanding of the testimony. (*McAlpin, supra,* at p. 1306.)

Applying these rules, it is apparent the trial court erred in part, but was also correct in part. We begin by noting that character evidence related to defendant's treatment of animals was obviously relevant. Despite the prosecutor's repeated protestations, such testimony would be inconsistent with the claim that defendant beat the dog to death. It would thus support the inference that defendant was unlikely to have committed the offense, and supported defendant's theory that Reyes was mistaken when she identified him as the perpetrator.

Even though appropriate character evidence was admissible, we find no error in the trial court's decision to prohibit Martinez from testifying about defendant's reputation for treating animals properly. The trial court reasoned, and we agree, that Martinez's testimony established she was not familiar with any reputation defendant may have had on this topic. At no time did Martinez discuss defendant's reputation for the treatment of animals with any friends, family members, or members of the community. Therefore, if defendant had a reputation for treating animals properly, Martinez had absolutely no personal knowledge of that reputation. Similarly, if Segundo did not have a reputation for abusing animals, Martinez was not aware of it.

5.

We conclude, however, the trial court erred when it prohibited Martinez from testifying about her opinion of defendant's character for the treatment of animals. The trial court reasoned that such an opinion was inadmissible because it would have to be based on Martinez's observations of defendant's interactions with animals. As explained in *McAlpin*, Evidence Code section 800 requires such an opinion be based on personal observations. As noted above, Martinez would have testified that in her opinion defendant treated animals fairly based on her personal observations of his interactions with a dog he shared with his brother. Accordingly, Martinez's lay opinion about defendant's character for the treatment of animals should have been admitted.

Even though we find error, reversal is required only if we conclude it was reasonably probable defendant would have achieved a better result had the error not occurred. (Cal. Const., art. VI, § 13; Evid. Code, § 354; *McAlpin, supra,* 53 Cal.3d at p. 1311.) We will address the prejudice issue in section III of this opinion.

At oral argument, appellate counsel argued, in essence, that *McAlpin* required us to reverse the conviction without performing a prejudice analysis, i.e., per se reversal was required. *McAlpin* provides no support for this argument, and, indeed, reaches the opposite conclusion. To explain why appellate counsel's reliance on *McAlpin* is misplaced, we will provide a more detailed analysis of the case.

McAlpin was convicted committing a lewd and lascivious act with a child under the age of 14 in violation of section 288, subdivision (a). McAlpin met the victim's mother, Anita, at a church function. On the day in question Anita took the victim and her other two children shopping to buy birthday gifts for the victim. They then drove to McAlpin's house to visit. All five individuals eventually ended up lying on McAlpin's bed watching television. Anita left the bedroom and took the youngest child outside to play when he became restless.

6.

The victim testified that after Anita left, McAlpin began touching her vaginal area and eventually inserted his finger in her vagina. After a few minutes the victim said she had to go to the bathroom, but went to her mother and reported the incident.

McAlpin denied touching the victim inappropriately, instead accusing the victim of touching his genitals after the mother went outside with the youngest child. McAlpin also testified that he immediately told the victim to stop and reported the incident to Anita.

To support his version of the events, defense counsel called two character witnesses. One testified she had dated McAlpin for a short while and stayed in contact with him thereafter. Through her contacts with McAlpin and his friends, she learned he had an excellent reputation for truth and veracity. The other witness was a college friend and co-worker. He testified that McAlpin was well respected in the company they worked for, and he had a "'high reputation among his fellow workers for truth and veracity.'" (*McAlpin*, *supra,* 53 Cal.3d at p. 1297.)

The issue before the Supreme Court that is relevant to this case was the trial court's refusal to allow three witnesses to testify about McAlpin's sexuality. Two of the proposed witnesses were women who dated McAlpin for a period of time and had sexual relations with him. Each woman also had a daughter of her own, and remained friendly with McAlpin after their intimate relationship ended. The women were expected to testify that in their opinion, McAlpin was not a sexual deviant, basing their opinions on their "normal" experiences with McAlpin, and their observations of his conduct around their daughters. (*McAlpin, supra,* 53 Cal.3d at p. 1305.) The third witness was a close male friend of McAlpin who would also testify that in his opinion McAlpin was not a sexual deviant. This opinion was based on McAlpin's normal sexual conduct with adult women the witness observed over the years. (*Ibid.*)

The Supreme Court began its analysis by noting that in *People v. Stoll* (1989) 49 Cal.3d 1136 it held that (1) "the fact that the defendant is not a sexual deviant is a relevant character trait within the meaning of section 1102, and (2) the statute allows a defendant to prove that trait by the opinion testimony of an expert witness. [Citation.]" (*McAlpin, supra,* 53 Cal.3d at pp. 1305-1306.) The Supreme Court next concluded the rule stated in *Stoll* also was applicable to lay witness testimony so long as the testimony met the requirements of Evidence Code section 800, i.e., the lay witness's testimony was rationally based on the perceptions (observations) of the witness. (*McAlpin, supra,* 53 Cal.3d at pp. 1306-1308.)

When applying this rule to McAlpin's arguments, the Supreme Court found the male proposed witness did not base his opinion on personal observations of McAlpin's conduct with children, and was thus properly excluded. Similarly, the female proposed witness testimony about their sexual experiences with McAlpin was not based on observations of McAlpin's conduct with children and was properly excluded. However, the women's opinion that McAlpin was not a person likely to commit a lewd and lascivious act on a child which was based on their personal observations of McAlpin's interactions with their daughters was "both a proper subject of lay opinion testimony and relevant to the charge of child molestation." (*McAlpin, supra,* 53 Cal.3d at p. 1309.)

The Supreme Court next rejected the Attorney General's argument that the testimony of the women based on their personal observations was inadmissible because it permitted McAlpin to prove a character trait through specific acts. The trial court and appellate court in McAlpin's case agreed with this argument, as did the trial court in this case. The Supreme Court disagreed. "[T]he witnesses proposed to testify that they observed defendant's behavior with their children throughout the course of their relationship with him, and their opinion that he is not a person given to lewd conduct with children arose from that experience as a whole. Thus viewed, the proffered

8.

testimony was intended to prove the relevant character trait not by specific acts of 'nonmolestation,' but by the witnesses' opinion of that trait based on their long-term observation of defendant's course of consistently normal behavior with their children. The trial court should have allowed such testimony." (*McAlpin, supra,* 53 Cal.3d at pp. 1309-1310, fn. omitted.)

The next topic addressed by the Supreme Court was the proposed testimony of the women witnesses that McAlpin had a reputation for "'normalcy in his sexual tastes.'" (*McAlpin, supra,* 53 Cal.3d at p. 1310.) To the extent this phrase could be interpreted to mean that McAlpin did not have a reputation in the community for being sexually attracted to young girls, the Supreme Court concluded "the proposed testimony is relevant to a charge of child molestation. Evidence that a defendant does *not* have a bad reputation for a relevant character trait is admissible as tending to show that he has a good reputation for that trait. [Citations.] And under either construction the testimony is not objectionable on the ground discussed in a preceding portion of this opinion, because it is evidence of reputation rather than lay opinion. 'Reputation is not what a character witness may *know* about defendant. Reputation is the estimation in which an individual is held; in other words, the character imputed to an individual rather than what is actually known of him either by the witness or others.' [Citation.] The rule that lay opinion testimony must be based on the witness's personal observation thus does not apply to reputation testimony, and indeed the Evidence Code imposes no such requirement. The trial court should therefore have allowed this testimony." (*Id*. at pp. 1310-1311.)

The Supreme Court also concluded the trial court erred in excluding the proposed opinion testimony that McAlpin was a person of high moral character. "In the context of the offer of proof we construe the word 'moral' in this phrase to refer to *sexual* morality. Thus construed, 'moral character' is a trait that is relevant to a sex offense charge, including the present prosecution for child molesting. We are cited to no California

9.

decision that squarely so holds, but such evidence has routinely been admitted in trials for sex offenses without drawing adverse comment by reviewing courts.  [Citations.]  Again, therefore, the trial court should have allowed this testimony."  (*McAlpin, supra,* 53 Cal.3d at p. 1311.)

The next topic addressed was the issue of prejudice, the issue Segundo's appellate counsel repeatedly referred to in oral argument.  The Supreme Court's conclusion is clear.  "The court's error in excluding the foregoing three additional items of character testimony is governed by the standard of prejudice prescribed both by Constitution (art. VI, § 13) and by statute (Evid. Code, § 354), and explained in *People v. Watson* (1956) 46 Cal.2d 818, 836.  [Citations.]"  (*McAlpin, supra,* 53 Cal.3d at p. 1311, fn. omitted.)

In affirming the judgment, the Supreme Court noted there were no contradictions or admitted untruths in the victim's testimony, no motive for the victim to fabricate the charge, the victim's testimony was not impeached in any way, her reputation for truth and veracity was not challenged, and her testimony was plausible.  (*McAlpin, supra,* 53 Cal.3d at p. 1312.)

The Supreme Court also noted it is likely the jury would not have given the excluded testimony great weight because it has been observed that "reputation testimony, the traditional means of proving character, is 'the least reliable' form of such evidence and is 'little more than accumulated hearsay.'  [Citation.]"  (*McAlpin, supra,* 53 Cal.3d at p. 1312.)  Finally, the Supreme Court concluded the evidence was not evenly balanced as the victim's testimony was supported by Anita's testimony, and the jury would have to conclude both were lying to accept McAlpin's defense.  For all of these reasons, the Supreme Court affirmed the judgment despite the trial court's error in excluding the proposed character evidence.  (*Id.* at p. 1313.)

Nowhere in the *majority opinion* was there any discussion of a per se reversal rule when an error was made in excluding character evidence.  Instead of citing the majority

opinion, and the applicable rule of law, appellate counsel in this case referred repeatedly to *Justice Broussard's dissent* in *McAlpin*. Justice Broussard stated "I cannot join in the majority's analysis of the trial court's ruling on the good character evidence proffered by defendant or, in particular, in the conclusion that the trial court's error in excluding much of this evidence was not prejudicial. Past California decisions have repeatedly recognized that in cases of this nature, in which a defendant is accused of a sexual offense against a child and the jury's determination necessarily turns on the relative credibility of the defendant and the alleged child victim, a defendant's right to introduce evidence of his good moral character is of crucial importance. Such evidence may be the only, or at least the most significant, evidence that an innocent defendant can present to support his own denial of the offense. As a consequence, the authorities suggest that in this context the erroneous exclusion of such good character evidence generally cannot be found harmless. This general principle has particular force in the present case because the record discloses that this was a much more closely balanced case than the majority opinion allows. Given the nature of the trial court's error and the state of the evidence, I believe that reversal is clearly required." (*McAlpin, supra,* 53 Cal.3d at p. 1313, dis. opn. Broussard, J.).)

Since appellate counsel has not cited any case in which a *majority of the Supreme Court* has adopted a rule of per se reversal as espoused by Justice Broussard, and we are not aware of any such case, reliance on the dissent is misplaced. This conclusion is obvious considering the majority opinion in *McAlpin* did not apply such a rule, instead affirming a judgment where error occurred after applying the *Watson* standard.

Also significant is the fact that Justice Broussard limited his comment to cases "in which a defendant is accused of a sexual offense against a child and the jury's determination necessarily turns on the relative credibility of the defendant and the alleged child victim." (*McAlpin, supra,* 53 Cal.3d at p. 1313, dis. opn. Broussard, J.).) Segundo

11.

was not charged with child molestation, he was charged with cruelty to animals. Moreover, there was no question in this case that a crime occurred; the only question was who committed the crime. And while the credibility of witnesses was certainly an issue, it is also an issue in virtually every criminal case.

It is in direct contradiction to our Constitution (art. VI, § 13), the applicable statute (Evid. Code, § 354), and *binding* Supreme Court precedent (*McAlpin, supra,* 53 Cal.3d at p. 1311), to assert reversal is required without considering whether a miscarriage of justice occurred simply because the trial court erroneously excluded a certain class of evidence.

## II.    Prosecutorial Misconduct.

Prior to trial, the issue of impeachment of defendant was discussed. The prosecutor indicated that, if defendant testified he would not hurt a dog, then he would impeach defendant by asking if he had shot Yolanda Valdez's dog.[1] Yolanda Valdez was the person who reported the crime to the police. When she did so, she apparently also reported that she thought the person who killed the dog was "the same guy that shot my dog." The prosecutor did not have any independent proof that defendant actually did so. Indeed, it does not appear the prosecutor, or anyone else, ever spoke to Valdez about her accusation. The prosecutor admitted he had no evidence available to support Valdez's accusation, and if defendant denied he shot Valdez's dog, that would be the end of the issue. Nonetheless, the prosecutor insisted he had a good faith basis for asking the question. Defense counsel objected to the proposed question. The trial court overruled the objections concluding the prosecutor had the right to ask the question.

---

[1]    Apparently the prosecutor misspoke when identifying the owner of the dog, whom he identified as Yolanda Reyes. The prosecutor made it clear the reporting party was not Liliana Reyes, and later identified the reporting party as Yolanda Valdez. For the sake of clarity we will refer to the reporting party as Yolanda Valdez.

12.

The prosecutor began his cross-examination of defendant by confirming defendant testified that he had never before hurt a dog. The next question was "Isn't it true that you shot your neighbor's dog, Yolanda Valdez?" The trial court sustained defense counsel's objection, and ordered the jury to disregard the question. Outside the presence of the jury, the trial court explained the change in ruling by stating that when it approved the question, it was referring to a question that could be posed to Martinez if she testified as a character witness.

Defendant asserts the prosecutor committed misconduct by asking the question about shooting Valdez's dog since the prosecutor had no proof defendant was responsible for doing so. The only information the prosecutor had was the statement made by Valdez in her call to the emergency operator, and even then all Valdez stated was she thought defendant had shot her dog.

It is obvious the question about Valdez's dog was improper, and the trial court initially erred when it ruled the question could be asked. "A prosecutor may not ask questions of a witness suggesting facts harmful to a defendant without a good faith belief that such facts exist. [Citation.]" (*People v. Pearson* (2013) 56 Cal.4th 393, 434; see also *People v. Bolden* (2002) 29 Cal.4th 515, 562.) The prosecutor repeatedly asserted that Valdez's unconfirmed belief provided a good faith basis for asking the question. This position is not well taken. A good faith belief exists when the prosecutor reasonably believes the question will be answered in the affirmative, or if not, that he will be able to produce a witness who can provide admissible testimony to prove the facts insinuated in the question. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1233; *People v. Bolden, supra,* 29 Cal.4th at pp. 563-564.) The prosecutor in this case did not expect defendant to admit he shot Valdez's dog, nor did he have any proof to support the accusation. Clearly this prosecutor did not know if there were any facts to support Valdez's belief because he did not perform any investigation. Accordingly, the prosecutor did not have a good faith

belief that defendant shot Valdez's dog, and should never have sought permission from the trial court to ask the question.

The People concede the question was improper, but assert the error was not prejudicial. We will address this issue in the following section.

### III. Prejudice.

Two errors occurred in the trial, first when the trial court precluded evidence of Martinez's opinion about defendant's character, and second when the trial court initially permitted the prosecutor to ask defendant if he shot Reyes's dog without a good faith belief defendant had done so. Defendant argues that each error by itself requires reversal of the judgment, and if not, the combined error demands reversal. The People assert reversal is not required because defendant did not suffer any prejudice.

The error in the admission or exclusion of evidence is reversible only if the result of the ruling was a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, §§ 353, 354.) A miscarriage of justice occurs when, after examination of the entire cause, we conclude it is reasonably probable a result more favorable to the defendant would have been reached had the error not occurred. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We conclude neither error, either by itself or when the combined effect is considered, resulted in prejudice sufficient to require reversal under the *Watson* standard.

It is unlikely Martinez's opinion that defendant would not hurt a dog would have swayed the jury. She was married to defendant's brother, thus suggesting bias. While she had known defendant for three years, and lived with him for a short period of time, she did not have any real interaction with him in relation to animals other than with the dog defendant jointly owned with his brother. This dog was kept at the apartment of Martinez and her husband, suggesting defendant's interaction with it was limited. Martinez did not testify about how Segundo treated this dog. She did testify that she did not see Segundo treat a neighbor's dog poorly. Moreover, how defendant treated his dog

was not necessarily indicative of how he would treat other dogs. Accordingly, Martinez's opinion did not have a significant foundation, and would not be persuasive.

Similarly, the circumstances surrounding the question about the death of Reyes's dog minimized the impact of the improper question. While the question improperly suggested the prosecutor had evidence damaging to defendant that was not presented to the jury, the trial court immediately sustained defense counsel's objection and ordered the jury to disregard the question. When the prosecutor asked for a side bar to discuss the ruling, the trial court denied the request and ordered the prosecutor to move on, reinforcing the trial court's order to disregard the question. The standard instructions also informed the jury that the questions asked were not evidence, and the jury was not to consider questions asked to which objections were sustained. We presume the jury was comprised of intelligent persons and that they understood and followed the trial court's instructions. (*People v. Richardson* (2008) 43 Cal.4th 959, 1028.) The combination of these circumstances minimized any possible prejudice for this isolated question.

In contrast, the evidence of defendant's guilt was overwhelming. Reyes positively identified defendant as the perpetrator, and identified him by the nickname he used in the neighborhood. She testified she was 100 percent certain Segundo was the perpetrator. Reyes testified she was familiar with defendant through contacts she had with him in the neighborhood. Reyes also stated she viewed defendant from a very short distance, and even confronted him about disposition of the dead dog. It is difficult to dispute this identification because Reyes knew defendant, had ample opportunity to observe him closely, and was able to positively identify him as the perpetrator.

The only evidence to contradict Reyes's testimony was provided by defendant himself. Obviously, defendant had strong motive for denying that he hurt the dog, and his inability to provide any evidence to corroborate his denial rendered it less than persuasive.

During oral argument, appellate counsel relied extensively on the purported similarity in appearance between Segundo and his brother to suggest Reyes was mistaken. The record does not support this argument. The only evidence to suggest the two brothers looked alike came from Segundo. He testified his brother was three years older, slightly taller, about the same weight, and with hair a little longer than Segundo's hair. According to Segundo, both brothers had similar mustaches. Segundo testified that his mother, aunts, and other friends have confused Segundo and his brother in the past. This is hardly evidence that the two shared a nearly identical appearance. We again note Segundo's motive to fabricate testimony favorable to his defense. His brother did not appear at trial, so the jury could not perform a visual comparison.

Moreover, Reyes expressed no confusion when differentiating Segundo from his brother. When asked about whether she knew "Pimpo," Segundo's nickname in the neighborhood, Reyes said she did because his uncle and his godparents lived in the neighborhood, and "his brother just moved." She positively identified Segundo as "Pimpo." She testified that "Pimpo" killed the dog. She identified the piece of wood used to kill the dog as from the "fence where his brother lives." She testified that Segundo retrieved a bucket from in front of his brother's apartment to dispose of the dead dog. She identified his brother's apartment as very close to her apartment. She confirmed that Segundo's brother moved into the apartment before the dog was killed. She noted that a female bulldog belonged to either Segundo or his brother. She knew Segundo lived nearby with his mother, but did not know exactly where he lived.

Reyes admitted she never had any conversations with Segundo, and she did not know his brother's name. However, she had spoken with the brother's wife, with whom she was on good terms.

16.

This testimony strongly suggests that Reyes could differentiate between Segundo and his brother. The fact Segundo admitted he did not have a conflict with Reyes further bolsters her testimony because she had no motive to fabricate her identification.

Finally, we also reject appellate counsel's contention that character evidence is particularly powerful, or crucial to the defense. Appellate counsel argued the defense in this case was mistaken identity, and since Reyes did not know the individual she mistook for Segundo (his brother), the evidence that Segundo had a reputation for treating animals properly would have swayed the jury. As the Supreme Court noted in *McAlpin*, reputation testimony is the least reliable form of evidence because it is often little more than accumulated hearsay. (*McAlpin, supra,* 53 Cal.3d at p. 1311.) To the extent Martinez would have testified to her opinion, as explained above, she was an arguably biased witness and the basis of her opinion was limited. This evidence would have had little persuasive value in this case.

For the same reasons that each error was not prejudicial, the cumulative effect of the two errors does not require reversal. Under these circumstances, any prejudice caused by the errors was minimal, and it was not reasonably probable that in the absence of error defendant would have achieved a more favorable result.[2]

## IV.     Terms of Probation.

Defendant argues the trial court erred when it imposed the following conditions of probation: (1) reimbursement of attorney fees to the County of Merced, (2) substance abuse and mental health counseling, and (3) electronic monitoring. The Attorney General concedes the attorney fee provision and the mental health counseling should be vacated, but argues the remaining conditions were properly imposed.

---

[2]     Defendant also makes a perfunctory argument that these errors violated his constitutional right to due process. Assuming, without deciding, defendant's right to due process was violated, we would conclude reversal was not required under the standard espoused in *Chapman v. California* (1967) 386 U.S. 18.

The case most often cited to define the parameters of probation or parole conditions is *People v. Lent* (1975) 15 Cal.3d 481 (superseded by statute as explained in *People v. Wheeler* (1992) 4 Cal.4th 284, 290-295). "The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. (Pen. Code, § 1203 et seq.) A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality ....' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Id*. at p. 486, fn. omitted.)

The attorney fee issue is governed by Penal Code section 987.8. This section generally provides the court with the ability to seek reimbursement for attorney fees appointed to defendants who assert they do not have the financial ability to hire an attorney. However, subdivision (f) requires the trial court to give notice to the defendant that the county may seek reimbursement for attorney fees before an attorney is appointed to represent him. Defendant contends, and the Attorney General concedes, the trial court did not give such notice to defendant, and, therefore, he cannot be compelled to reimburse the county for attorney fees. (*People v. Turner* (1993) 15 Cal.App.4th 1690, 1695, disapproved on other grounds in *People v. Flores* (2003) 30 Cal.4th 1059, 1062-1068.) We accept the concession as properly made.

The Attorney General also concedes there is no evidence in the record that defendant needs mental health counseling, pointing out there was no testimony from a mental health expert to suggest this crime was related to a mental health condition. We also accept this concession as properly made.

The Attorney General argues, however, there is evidence in the record to support the substance abuse counseling requirement. Defendant, who committed this crime shortly before his 19th birthday, admitted in the probation report he began drinking alcohol at the age of 16, and began smoking marijuana at the age of 18. He admitted to consuming both alcohol and marijuana until shortly before the crime was committed. While it is true there is no evidence intoxication played any role in the crime, the trial court could have reasonably concluded substance abuse testing and counseling would deter future criminality. Accordingly, we conclude imposition of this provision was not an abuse of discretion.

The final condition that is in dispute is the requirement of electronic monitoring. Defendant argues that because he was required to serve six months in jail, there was no basis for the trial court to also order electronic monitoring. According to defendant, the only method through which the trial court could order electronic monitoring was through a modification of probation, and since there were no changed conditions the trial court was without jurisdiction to do so. (*People v. Cookson* (1991) 54 Cal.3d 1091, 1095.) *Cookson* is inapposite because the trial court was not attempting to modify the terms and conditions of probation, it was imposing them in the first instance. The question is whether the trial court abused its discretion by imposing both a jail term of six months as well as electronic monitoring which, presumably, would commence upon defendant's release from jail. We find no abuse of discretion. The trial court could reasonably conclude the short jail term imposed was not sufficient in and of itself to prevent future criminal conduct by defendant, and therefore a period on the electronic monitor would help achieve that goal.

## V. Modification of the Terms of Probation.

The sentencing hearing for defendant was on December 30, 2013. One of the terms of probation imposed on that date prohibited defendant from owning or possessing

any animal that weighed less than 100 pounds. Shortly after the hearing, the probation department objected to this condition, asserting defendant should be prohibited from owning or possessing any animal, regardless of its weight. On January 15, 2014, the trial court held a hearing to address the objection of the probation department. At that hearing the trial court modified the terms of probation to prohibit defendant from owning or possessing any animal weighing less than 250 pounds.

Defendant argues, and the Attorney General concedes, the trial court was without jurisdiction to modify the terms of probation because there was no change in circumstance which would justify the change. "An order modifying the terms of probation based upon the same facts as the original order granting probation is in excess of the jurisdiction of the court, for the reason that there is no factual basis to support it. [Citation.]" (*In re Clark* (1959) 51 Cal.2d 838, 840.)

## DISPOSITION

The sentence is modified to vacate the terms of probation that required defendant to participate in mental health counseling, and which required reimbursement to the county for attorney fees. The January 15, 2014, order modifying defendant's probation is also vacated. The original term of probation prohibiting defendant from owning or possessing any animal that weighed less than 100 pounds remains in effect. The judgment is affirmed in all other respects.

20.

                                                        _____
                                                        LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
PEÑA, J.